E-FILED
Monday, 29 June, 2026 03:38:51 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| VALERIE COWEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-03205 |
| | ) | |
| CHOICE HOTELS INTERNATIONAL SERVICE CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO REQUESTED DAMAGES**

DEFENDANT Choice Hotels International Service Corporation ("Choice Hotels"), by and through its attorneys, Gordon Rees Scully Mansukhani LLP, responds to the request for damages of Plaintiff VALERIE COWEN ("Cowen"), and states the following:

**INTRODUCTION**

By prior order of Court, the plaintiff was awarded summary judgment on her Illinois Wage Payment and Collection Act ("Wage Act") claim. (Dkt. 44). The parties have prepared and stipulated certain facts in lieu of a trial. (Dkt. 55 and Exhibits therein ("Stipulations")). Plaintiff has submitted her request for damages. (Dkt. 57 "Pl. Request") While not conceding that it "employed" plaintiff or that the grant of summary judgment in plaintiff's favor was appropriate[1], Defendant hereby explains the appropriate amount of damages is less than requested.

**STANDARD FOR DAMAGES FINDING**

To establish a claim under the Wage Act, a plaintiff must demonstrate that "wages or final compensation is due to him or her as an employee from an employer under an employment contract

[1] See Dkt. 55, FN 1.

or agreement." *Landers–Scelfo v. Corporate Office Systems, Inc*., 356 Ill.App.3d 1060, 1067, 293 Ill.Dec. 170, 827 N.E.2d 1051 (2005). According to the statute, for an employee other than a separated employee, "wages" are defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2. Payments to separated employees are termed "final compensation," which is defined as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." *Id*. As this Court has ruled plaintiff is an employee as a matter of law and not an independent contractor under the Wage Act, the issue turns to damages.

An employee bears the burden of proving that she performed work for which she was not properly compensated. *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 686–87 (1946)(overtime case), superseded by statute on other grounds as stated in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005); *Brown v. Fam. Dollar Stores of IN, LP*, 534 F.3d 593, 594 (7th Cir. 2008). Any award of wage damages cannot rest upon guesswork and speculation. *E.g., Wasson v. Peabody Coal Co*., 542 F.3d 1172, 1176 (7th Cir. 2008) (affirming the entry of judgment as a matter of law where the damages award was unsupported in the evidence and based on nothing but speculation and guesses); *Brand v. Comcast Corp*., 135 F. Supp. 3d 713, 742 (N.D. Ill. 2015) (noting that, even under Anderson's relaxed standard, plaintiffs must still submit sufficient evidence from which a jury could calculate their damages).

Here, plaintiff has provided evidence of only certain items of her claimed damages and often relies on speculation for her claims. Based on the stipulated evidence, the total amount is far less than sought by plaintiff.

**CATEGORIES OF DAMAGES**

## I. UNEMPLOYMENT BENEFITS

As noted, Choice Hotels disagrees that it has any obligation to pay for Illinois state-provided unemployment benefits. However, given this Court's ruling and given the easily calculable amount of benefits that the IDES would have paid Plaintiff after her contract with Choice Hotels ended (again, assuming employment status and other eligibility), the parties stipulated that the amount in question was $17,394.00. (Dkt. 55 ¶¶ 16-26).

Now, in an attempt to increase the award for unemployment damages, Plaintiff exceeds the amounts stipulated by the parties and cites to the federal CARES Act. 15 U.S.C. 9001 et.seq., enacted in response to the 2020 Coronavirus pandemic. As Choice Hotels understands Plaintiff's request, in relevant part the CARES Act provided an emergency supplement to eligible state unemployment benefits of $600 weekly through July 31, 2020. 15 U.S.C. 9023(b)(3)(A)(1). In creating the emergency supplement, Congress made clear that the federal government would pay to the ***states*** the amounts incurred under the CARES Act and all related expenses from "the general fund of the Treasury, without fiscal year limitation…" *Id at* 9023(d). Plaintiff's claim now has Choice Hotels paying her direct damages for amounts that explicitly and inarguably would not have been paid by Choice Hotels had she followed the appropriate procedure in filing for an unemployment claim not just under state law, but now federal law. Choice Hotels is now obligated to pay the obligations of both sovereigns.

In sum, Choice Hotels disagreed and disagrees it owes Plaintiff any amounts for unemployment losses, but under this Court's order, agreed to stipulate the amounts payable by the IDES were $17,394.00. (Dkt. 55 ⁋⁋ 16-26). Choice Hotels suggests that Plaintiff's attempt to add on non-stipulated amounts payable under federal law reflect how legally incorrect these damages are. Choice Hotels suggests that over its continued objection, the amount owed is that under state law and as stipulated, *$17,394.00*.

## II. ILLINOIS WAGE PAYMENT ACT

### A. VACATION/HOLIDAY ("PTO")

Choice Hotels reiterates that there was an "agreement" (56 Ill. Admin Cide 300.400 and 300.520(b))(Dkt. 57, p. 3) between the parties regarding the payment of any "holiday" or "vacation." That "agreement" was put into writing on July 1, 2012 and confirmed that Cowen Consulting LLC was an independent contractor of Choice Hotels and not an employee. (Dkt. 55-1). Additionally, in writing, Choice Hotels enacted a "Travel Policy & Procedure" that confirmed independent contractors were not eligible for vacation pay (or "Paid Time Off"/"PTO" as used in the policy). (Dkt. 55 ⁋ 28).

#### *1. Damages*

Nevertheless, as Plaintiff is deemed an employee of Choice Hotels (Dkt. 44), her entitlement to any "vacation" or "holiday" pay must arise from what Choice Hotels promised its comparable employees during the relevant statutory period. Given this imagined construct, Plaintiff's request still does not add up. The stipulated facts do not demonstrate that she was ever unable to use the imagined PTO while she was a contractor of Choice Hotels. (Dkt 55 ⁋⁋ 27-30). The stipulated facts instead reflect that she was free to take time off at her leisure. *Id.* Most importantly, the stipulated facts reflect that Plaintiff was unquestionably paid the agreed upon rate

for her services each and every week of her relationship with Choice Hotels for eight years without interruption. (Dkt. 55 ⁋ 11; Dkt. 55-2). Choice Hotels never once deducted a weekly payment to Plaintiff over the course of eight years. *Id.* Thus, the logical conclusion is that even if Plaintiff had been deemed to accumulate PTO over the tenure of her relationship, she was fully allowed to use such paid PTO and in fact did use it without interference from Choice Hotels.

This means that Plaintiff cannot recover on this claimed element of damage. This is abundantly clear in Plaintiff's request. The Plaintiff presents an unsupported theory that she should simply receive what amounts to double daily pay for the amounts of PTO she claims she did not use in any given year (as well as double pay for holidays). (Dkt. 57 p. 3-5 "Sec. B"). The reason this claim is literally unsupported is because throughout, she cites to no stipulated fact that is before this Court in her calculations. If she had cited to the stipulated facts before this Court, it becomes clear that she is not entitled to recover this portion of her allegations as she has already been fully and completely paid for any time off she took.[2] Additionally, there is no stipulated fact before this Court that reflects some forfeiture of PTO at separation.

#### 2. ***Statutory Penalties***

As there are no amounts owing under the Wage Act, there are not accrued penalties owed.

### B. **HEALTH INSURANCE**

Under the fiction of Plaintiff was an employee of Choice Hotels, Choice Hotels has identified the costs of health insurance for comparable full-time employees during the relevant statutory period. (Dkt. 55-5). The Plaintiff's presentation of these amounts is incorrect and the

---

[2] See, for instance where Plaintiff writes that she "normally worked [holidays]." (Dkt. 57 p. 4). Plaintiff does not cite to a stipulated fact. If she had, Plaintiff's cite would recognize that she had been paid the equivalent of every holiday for eight years without interruption.

actual data reflects a smaller difference in health benefits as an employee than she actually paid, thus she has smaller damages for this portion of her allegations.

### *1. __Damages__*

While Plaintiff does not break out her health insurance payments into medical, dental and vision, comparable full-time employees at Choice Hotels did receive and pay for all such benefits. Based on Dkt. 55-5, Plaintiff – who had one dependent – would have paid the following for benefits from 2015-2020:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | **Medical Plan Option** | **Tier** | **Year** | **Biweekly Employee Rate** | | **Annual Employee Rate** | |
| 2 | Medical - HSA | Employee + Child | 2015 | $ | 120.40 | $ | 3,130.40 |
| 3 | Medical - HSA | Employee + Child | 2016 | $ | 88.26 | $ | 2,294.76 |
| 4 | Medical - HSA | Employee + Child | 2017 | $ | 88.26 | $ | 2,294.76 |
| 5 | Medical - HSA | Employee + Child | 2018 | $ | 88.26 | $ | 2,294.76 |
| 6 | Medical - Choice OAP | Employee + Child | 2019 | $ | 128.42 | $ | 3,338.92 |
| 7 | Medical - Choice OAP | Employee + Child | 2020 | $ | 139.91 | $ | 3,637.66 |
| 8 | | | **Total** | | | **$** | **16,991.26** |
| 9 | | | | | | | |
| 10 | **Dental Plan Option** | **Tier** | **Year** | **Biweekly Employee Rate** | | **Annual Employee Rate** | |
| 11 | CIGNA | Dual | 2015 | $ | 16.40 | $ | 426.40 |
| 12 | CIGNA | Dual | 2016 | $ | 16.40 | $ | 426.40 |
| 13 | CIGNA | Dual | 2017 | $ | 16.40 | $ | 426.40 |
| 14 | CIGNA | Dual | 2018 | $ | 16.40 | $ | 426.40 |
| 15 | CIGNA | Dual | 2019 | $ | 16.40 | $ | 426.40 |
| 16 | CIGNA | Dual | 2020 | $ | 16.40 | $ | 426.40 |
| 17 | | | **Total** | | | **$** | **2,558.40** |
| 18 | | | | | | | |
| 19 | **Vision Plan Option** | **Tier** | **Year** | **Biweekly Employee Rate** | | **Annual Employee Rate** | |
| 20 | VSP | Dual | 2015 | $ | 6.05 | $ | 157.30 |
| 21 | VSP | Dual | 2016 | $ | 6.05 | $ | 157.30 |
| 22 | VSP | Dual | 2017 | $ | 6.05 | $ | 157.30 |
| 23 | VSP | Dual | 2018 | $ | 5.56 | $ | 144.56 |
| 24 | VSP | Dual | 2019 | $ | 5.56 | $ | 144.56 |
| 25 | VSP | Dual | 2020 | $ | 5.56 | $ | 144.56 |
| 26 | | | **Total** | | | **$** | **905.58** |

Taking into account that the relevant statutory period is not equivalent to the calendar year[3], the total amount Plaintiff would have paid for benefits is $16,412.45. Plaintiff's evidence supplies that she paid the following for her benefits from the same period was $27,831.98. (Dkt.

[3] Defendant calculates the employment period constituting eight months in 2015 and four months in 2020.

55 ⁋ 33). The difference in the amounts of medical care between what was paid as an independent contractor and what would have been paid as an employee is thus $11,419.53.

### 2. ***Penalties***

While Choice Hotels continues to disagree and reserve all objections to the award of damages under the Wage Act related to health benefits, the prior order of Court results in an underlying award of statutory damages under the Wage Act of $11,419.53, with statutory damages as follows:

May 2020-July 2025 (62 months at 2% ($228.39))= $14,160.22

August 2025-June 2026 (11 months at 5% ($570.98))= $6,280.74

The total amount for Plaintiff's claim for retirement contributions is ***$31,860.49***.

## C. **RETIREMENT**

Choice Hotel eligible employees were allowed to contribute to a company-sponsored 401(k) account. (Dkt 55. ⁋ 34). As with all 401(k) accounts, the retirement plan is designed as a pre-tax savings for the employee's own contributions subject to federal regulation and plan rules. Choice Hotels would then make a contribution to "match" certain employee contributions on a plan-wide basis. Choice Hotel's "match" was effectively 4%. (*Id.*).

Plaintiff was not able to participate in the Choice Hotels plan as she was an independent contractor. Thus, to the extent that Plaintiff suffered any damage, the measure of damage in what Choice Hotels did not "match" any contribution she made to a retirement account. Plaintiff's calculations do not accurately reflect the stipulated facts.

### 1. ***Damages***

Though an independent contractor, during the relevant statutory period Plaintiff contributed $16,000.00 to a personal Roth IRA. (Dkt. 55 ⁋ 35). If she had contributed that amount

to the Choice Hotels 401(k) plan, that would have equaled donations of 3.5% of her annual salary, which Choice Hotels would have matched 100% of the first 3% and 50% of the next .5%. Over a five-year period, this would have equaled $14,625, calculated as $13,500 (100% of 3% ($2,700.00)) and $1,125 (50% of .5% ($450.00)).

Plaintiff's proposed theory of damages on this end is both speculative and contrary to the stipulated facts. (Dkt. 57 p. 8 "Sec. E"). Plaintiff wants this Court to award her amounts as if she contributed 4% every month for five years and then Choice Hotels would match 100% of that amount. The problem with this theory is that it is stipulated what Plaintiff actually did contribute, which was $16,000 total. (Dkt. 55 ⁋ 35). Plaintiff is not entitled to change the stipulated facts to seek an award contrary to what she actually invested in a retirement.

### *2. __Penalties__*

While Choice Hotels continues to disagree and reserve all objections to the award of damages under the Wage Act related to retirement account contributions, the prior order of Court results in an underlying award of statutory damages under the Wage Act of $14,625, with statutory damages as follows:

| | |
|---|---|
| May 2020-July 2025 (62 months at 2% ($292.50))= | $18,135.00 |
| August 2025-June 2026 (11 months at 5% ($731.25))= | $8,043.75 |

The total amount for Plaintiff's claim for retirement contributions is *__$40,803.75__*.

### D. __EXPENSES__

Plaintiff still seeks an award for alleged unpaid expenses. However, her claim falters as she admits she never sought reimbursement of anything unreimbursed in a reasonably timely manner. (Dkt. 55 ⁋ 36). Her testimony:

Did you submit the receipts for
reimbursement for those items?
A I did not. I was given no -- other than the
telephone call that said we no longer need your
services, my e-mail was instantly shut down. I
had -- I received no direction on how to reimburse
for those. The only thing I received was a letter
saying I needed to send their stuff back.
Q Okay. What was the typical process for
getting reimbursement prior to this?
A I mean, you filled out an expense report and
e-mailed it to Cassandra along with receipts.

Page 15

A But, again, I was given no direction on how
to seek reimbursement for those items.
Q Okay. So did you ask for direction from
somebody?
A No. I was terminated. My telephone was shut
off. My e-mail was shut off. I didn't feel like I
should reach out.
Q Okay. But is it fair to say you could have
texted Cassandra or you could have reached out to her
but you didn't?
A I would not feel comfortable doing that --
Q Okay.
A -- reaching out in that way.
Q Okay.
A I e-mailed a letter asking for reimbursement
for those at some point.
Q Right, right. But in the immediate aftermath
of the termination, you did not ask for any kind of
instruction about submitting reimbursement, right?
A No.

(Dkt. 22-5 p. 155-157).

The Wage Act specifies that "[a]n employee is not entitled to reimbursement under this Section if (i) the employer has an established written expense reimbursement policy and (ii) the employee failed to comply with the written expense reimbursement policy." 820 ILCS 115/9.5. Plaintiff's testimony clearly and unambiguously demonstrates that she knew of Choice's reimbursement policy and failed to take action. At any point, she could have submitted her claimed

unreimbursed expenses but instead only chose to do so long after the contractual relationship ended and when she sought damages in this litigation. That is the behavior the Wage Act prevents and the award on her claim for expenses should be zero.

## CONCLUSION

WHEREFORE, for the reasons stated herein, over its objections and while expressly preserving and restating the same, Defendant Choice Hotels International Service Corporation respectfully requests that the Court enter the following award:

| | |
|---|---|
| Unemployment Act | $17,394.00 |
| Wage Act: Health Benefits | $31,860.49 |
| Wage Act: Retirement Contributions | $40,803.75 |
| **TOTAL** | **$90,058.24** |

Defendant agrees that Plaintiff is entitled to an award of her attorney's fees and costs under the Wage Act and requests an opportunity to respond to same once filed by Plaintiff.

Dated: June 29, 2026

Respectfully submitted,

By: */s/ Patrick F. Moran*

Patrick F. Moran, ARDC No. 6279297
GORDON & REES LLP
One North Wacker, Suite 1600
Chicago, Illinois 60606
Tel.: (312) 980-6774
Email: pmoran@grsm.com
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Attorney for Plaintiff*
James P. Baker
Baker, Baker & Krajewski LLC
415 South Seventh Street
Springfield, IL 62701
jpb@bbklegal.com

By: */s/ Patrick F. Moran*
Patrick F. Moran, ARDC No. 6279297
GORDON & REES LLP
One North Wacker, Suite 1600
Chicago, Illinois 60606
Tel.: (312) 980-6774
Email: pmoran@grsm.com
*Attorney for Defendant*