E-FILED
Thursday, 12 November, 2026 09:23:42 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **VALERIE COWEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cv-3205** |
| | ) | |
| **CHOICE HOTELS INTERNATIONAL SERVICE CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

Before the Court are the parties' proposed damages awards. d/e 57 (Plaintiff); d/e 60 (Defendant). The Court must fashion a damages award after granting the Plaintiff's Motion for Partial Summary Judgment as to her employment status. d/e 44.

## I. BACKGROUND

On September 24, 2021, Plaintiff filed a two-count Complaint alleging that Defendant misclassified her as an independent contractor, depriving her of benefits under the Unemployment Insurance Act ("Unemployment Act"), 820 ILCS 405/212, and the

Illinois Wage Payment and Collection Act ("Wage Act"), 820 ILCS 115/2. The "wages" owed are broadly defined as "any compensation owed [to] an employee [] pursuant to an employment contract or agreement." 820 ILCS 115/2. The Court agrees with the parties that both the Unemployment Act and the Wage Act apply.

On October 31, 2023, Plaintiff filed a Motion for Partial Summary Judgment and an accompanying memorandum in support. See d/e 19, 20. Plaintiff requested partial summary judgment in her favor on the issue of whether she is an employee or an independent contractor of Defendant. See d/e 19. On October 31, 2023, Defendant filed a Motion for Summary Judgment. See d/e 22.

On April 5, 2025, this Court entered an Opinion and Order granting Plaintiff's Motion for Partial Summary Judgment as to Plaintiff's status as an employee. d/e 44. On June 1, 2026, Plaintiff submitted a Memorandum with Respect to the Issue of Damages (d/e 57). On June 29, 2026, Defendant submitted its

Response in Opposition (d/e 60). Plaintiff filed her Reply (d/e 61) on July 10, 2026.

## II. ANALYSIS

The parties disagree on six aspects of the damages award: (1) whether Plaintiff is entitled to federal and state unemployment benefits; (2) the amount and value of Plaintiff's unused vacation days; (3) the amount by which Plaintiff overpaid for health insurance as a result of being classified as an independent contractor; (4) the amount Plaintiff would have contributed to the Defendant's 401(k) plan had she been able to participate, and relatedly the value of the employer funds matching that Defendant would have provided; (5) whether Plaintiff is entitled to be reimbursed for certain work-related expenses; and (6) the amount of statutory penalties owed for Defendant's failure to provide the benefits listed above.

The Court relies primarily on the parties' Stipulations of Undisputed Facts and Proposed Conclusions of Law (d/e 55) for the facts required to fashion a damages award. The parties agree that the relevant statutory period is from April 21, 2015, through April

21, 2020. d/e 55, ¶ 5. The Court also rounded each figure to the nearest cent.

As a preliminary matter, the Plaintiff's salary is an input to calculating the value of several categories of benefits. But the parties' Stipulation of Undisputed Facts has conflicting information on Plaintiff's salary. At one point, the stipulation states that Plaintiff earned $80,000 per year between July 2014 and December 2018. d/e 55, ¶ 13. However, the following paragraph states that Plaintiff earned two different amounts in that period. Id. at ¶ 14. A third source—exhibits from Defendant's Summary Judgment brief—show that Plaintiff's annual salary progressed as follows:

- June 2012-June 2014: $70,000
- July 2014-November 2016: $77,000
- December 2016-December 2018: $80,000
- January 2019-May 2020: $90,000

d/e 22-8, p. 3. This matches the weekly salary data provided in paragraph 14 of the stipulation, provided that the July 2014 to November 2016 figure is $1,480.77, not $1408.77, as the parties submitted. d/e 55, ¶ 14. Accordingly, the Court will apply the annual salary as listed above instead of the parties' description in paragraph 13 of the stipulation.

**A. Unemployment Benefits**

Under the Illinois Unemployment Insurance Act, workers may obtain weekly payments to partially replace their lost wages. 820 ILCS 405/100. The parties agree Plaintiff is eligible for such payments.

**1. Stipulated facts**

The parties agree that Plaintiff was unable to obtain unemployment benefits from the Illinois Department of Employment Security (IDES). d/e 55, ¶¶ 19-20. The parties also agree that her state unemployment benefits would have amounted to $17,394. Id. at ¶ 26.

**2. Analysis**

Plaintiff asserts that she is entitled to federal in addition to state unemployment benefits. Specifically, Plaintiff asserts that she would have obtained an additional $600 per week in benefits under the Coronavirus Aid Relief and Economic Security Act ("CARES Act"). d/e 57, p. 2; 15 U.S.C. § 9023. Defendant argues that it should not have to pay any damages for unemployment benefits

because those payments would have been the responsibility of the state and federal governments, not Defendant. d/e 67, pp. 3-4.

The Court holds that Defendant should pay the $17,394 in unemployment payments that Plaintiff would have obtained from IDES. Even though these benefits would have been paid out by the state, Defendant's failure to properly classify Plaintiff caused her to be deprived of those benefits.

But the Court will not award federal unemployment benefits. First, the Court cannot be certain that Plaintiff would have been deemed eligible. Second, federal benefits were not addressed in the stipulation, which was filed after the Court had already granted Summary Judgment to Plaintiff.

**3. Conclusion**

Defendant must pay Plaintiff $17,394 in lost state unemployment benefits, but Defendant is not responsible for any federal benefits. Defendant is not liable for penalties on the state unemployment benefits because the Wage Act dictates that penalties apply to wages "paid [] by" Plaintiff's employer. 820 ILCS 115/14.

### B. Vacation Days

Under the Wage Act, Plaintiff is entitled to the value of accrued, unused vacation days she had at the time of termination. 820 ILCS 115/5; 115/2. State law requires the payout, but the amount of the payout is determined by company policy on how vacation days are accrued.

#### 1. Stipulated facts

The parties stipulate that Defendant provided nine paid holidays each year and that Plaintiff routinely worked two of them. d/e 55, ¶ 29. The parties also agreed that Plaintiff was entitled to 20 days of paid vacation after completing three years of employment. Id. at ¶ 27. Accordingly, the first year in which Plaintiff could take vacation is the 12-month period starting July 2015. Id. at ¶ 4. Finally, the parties agreed that Plaintiff took seven days of paid vacation each year, with an additional three weeks in 2017 and three days in 2018. Id. at ¶ 27.

#### 2. Analysis

Plaintiff asserts that she is entitled to unused vacation days from each year of her employment and that those days should be

valued by her most recent annual salary ($90,000). d/e 57, p. 4. Defendant asserts that it owes Plaintiff nothing because she was already paid in full each month that she took vacation, and thus any payment for vacation time would amount to "double pay." d/e 60, p. 5.

Plaintiff may be correct that she is entitled to unused vacation days, but unused vacation days from prior years should not be valued in accordance with her most recent salary. Instead, each year's unused days should be valued in accordance with the salary Plaintiff earned at the time.

Defendant is correct that Plaintiff was already compensated in full for some paid holidays, but additional compensation for unused vacation days would not amount to "double payment." That Plaintiff was paid in full for months in which she took vacation focuses on compensation for used vacation days when the issue is compensation for unused days. Plus, Plaintiff should be compensated for the two paid holidays she routinely worked because she might have known she did not have to work those days had she been classified as an employee.

But the Court is missing a key piece of information it needs to precisely calculate the value of Plaintiff's unused vacation days—how vacation days are treated year-to-year. For example, sometimes unused vacation days can be "rolled over" into the following year, sometimes the monetary value of the unused days is paid out at the end of each year, and sometimes unused vacation days are forfeited at the end of each year.

**3. Conclusion**

The Court nonetheless will award $10,000 for unused vacation days. This award strikes a balance between recognizing that Plaintiff missed out on some days and that the Court does not have all the information it needs to calculate the value of unused days more precisely.

The parties appeared to agree to accrue penalties from the date of termination rather than the date of each year in which they were earned. 820 ILCS 115/14(a). Defendant appears to argue that Penalties accrued at 2% until July 2025, presumably because P.A. 104-135 amended the Wage Act and took effect August 1, 2025. d/e 60, p. 8; 820 ILCS 115/14. But the penalty had already

been changed from 2% to 5% in P.A. 102-0500, which took effect July 2021. Accordingly, Plaintiff is correct that penalties accrued at 2% from May 2020 through July 2021 and at 5% from August 2021 through May 2026. d/e 57, p. 5. Under these penalty rates, Defendant is responsible for an additional $31,500.

Combining the $10,000 award and $31,500 in penalties, Defendant owes $41,500 in damages related to Plaintiff's unused vacation days.

### C. Health Insurance

#### 1. Stipulated facts

Because Plaintiff was classified as an independent contractor, she had to obtain a personal health insurance policy instead of participating in Defendant's employer-sponsored plan. d/e 55, ¶¶ 32-33. The policy also covered her dependent children. Id. The stipulation and its associated exhibits detail the amount Plaintiff would have contributed to an employer-sponsored plan had she been classified as an employee. d/e 55-5, p. 1.

The Court will total the cost of the medical, dental, and vision plans and pro rate the annual totals according to the relevant

statutory period (April 21, 2015 – April 21, 2020). The parties appear to agree to calculate the value by using whole months. This leaves eight months in 2015 and four months in 2020.

**2. Plaintiff's hypothetical premiums under Defendant's sponsored plan**

**a. Total: $16,411.46**

| **Year** | **Medical** | **Dental** | **Vision** | **Months** | **Total** |
|---|---|---|---|---|---|
| 2015 | $3,130.40 | $426.40 | $157.30 | 8 | $2,476.07 |
| 2016 | $2,294.76 | $426.40 | $157.30 | 12 | $2,878.46 |
| 2017 | $2,294.76 | $426.40 | $157.30 | 12 | $2,878.46 |
| 2018 | $2,294.76 | $426.40 | $144.56 | 12 | $2,865.72 |
| 2019 | $3,338.92 | $426.40 | $144.56 | 12 | $3,909.88 |
| 2020 | $3,637.66 | $426.40 | $144.56 | 4 | $1,402.87 |

d/e 55-5, p. 1.

**3. Plaintiff's premium under her personal health plan**

**a. Total: $28,249.24**

| **Year** | **Monthly Premium** | **Months** | **Total** |
|---|---|---|---|
| 2015 | $417.26 | 8 | $3,338.08 |
| 2016 | $474.58 | 12 | $5,694.96 |
| 2017 | $474.58 | 12 | $5,694.96 |
| 2018 | $474.58 | 12 | $5,694.96 |
| 2019 | $474.58 | 12 | $5,694.96 |
| 2020 | $532.83 | 4 | $2,131.32 |

d/e 55, ¶ 33.

**4. Conclusion**

Plaintiff is therefore entitled to the difference in cost between the premiums she paid ($28,249.24) and the lower premiums she would have paid had she been classified as an employee and been able to participate in Defendant's employer-sponsored plan ($16,411.46). Plaintiff is therefore entitled to $11,837.78. Penalties on this sum amount to $37,289.13. Combining the two, Defendant is responsible for $49,126.91 related to Plaintiff's health insurance costs.

**D. Retirement Plan Contributions**

**1. Stipulated facts**

Defendant also offers a group 401(k) plan. d/e 55, ¶¶34-36. Defendant fully "matched" employee contributions up to 3% of their salary and half of the next 2%. Id. Thus, employees had to contribute 4% of their salary to maximize Defendant's matching.

Because Plaintiff was classified as an independent contractor, she was not eligible to participate in the 401(k) plan. Instead, Plaintiff maintained a personal Roth IRA for which she made

contributions of $16,000 during the relevant statutory period. d/e 55, ¶35.

**2. Analysis**

Plaintiff asserts that she is entitled to the maximum contribution match (4%) even though we cannot know how much she would have contributed had she been able to participate. d/e 57, p. 8. Plaintiff asserts that 4% of her salary over the relevant statutory period would amount to $16,535.09. Id. Plaintiff asserts she is entitled to that amount because Defendant would have matched that amount had Plaintiff been able to participate in Defendant's 401(k) plan. Id. However, following Defendant's lead of including eight months in 2015 and four months in 2020, the Court calculates this figure at $16,343.34.

Defendant counters that the relevant amount of contributions is the $16,000 she contributed to a personal IRA during the relevant statutory period. d/e 60, p. 8.

**3. Conclusion**

The Court agrees with Plaintiff. First, the difference between what Plaintiff contributed to her personal account and what she

would have had to contribute to obtain Defendant's full match is just $343.34. Spread over five years, Plaintiff would have had to contribute just $5.72 more per month. Plaintiff could likely have contributed these additional funds. Second, though an award cannot be based solely on speculation, "[s]peculation has its place in estimating damages, and doubts should be resolved against the wrongdoer." Wasson v. Peabody Coal Co., 542 F.3d 1172, 1176 (7th Cir. 2008); Olympia Equip. Leasing Co. v. W. Union Tel. Co., 797 F.2d 370, 383 (7th Cir. 1986).

Accordingly, Plaintiff is entitled to the $16,343.34 that Defendant would have matched had she been able to participate in its group 401(k) plan. Penalties on this figure amount to $51,481.74. Combining the damages and penalties, Defendant is responsible for $67,825.08 related to Plaintiff's retirement contributions.

### E. Expense Reimbursement

Under the Wage Act, an employer "shall reimburse an employee for all necessary expenditures." 820 ILCS 115/9.5.

**1. Stipulated facts**

The parties agreed that Plaintiff had "recently" incurred about $1,200 in unreimbursed expenses. d/e 55, ¶ 36(d). They also agreed that Plaintiff did not submit those expenses for reimbursement after her termination. Id. at ¶ 36(e).

**2. Analysis**

Plaintiff asserts that she is entitled to full reimbursement for expenses because she was terminated before she could submit her reimbursement request. d/e 57, pp. 8-9. Defendant argues that Plaintiff failed to request reimbursement at any point and, therefore, has forfeited her right to recover those expenses. d/e 60, pp. 8-10.

**3. Conclusion**

The Court agrees with Defendant. Plaintiff acknowledged that she could have but failed to request reimbursement either before or after her termination. d/e 60, p. 9. Further, that Plaintiff was terminated within the 30-day period in which she was required to submit her request was not part of the stipulation. Plaintiff is not entitled to any recovery for work-related expenses.

## III. CONCLUSION

IT IS ORDERED that Judgment shall be and is ENTERED for Plaintiff and Against Defendant as follows:

| **Damages** | **Amount** |
|---|---|
| Unemployment benefits | $17,394.00 |
| Unused vacation days | $10,000.00 |
| Penalties | $31,500.00 |
| Health insurance | $11,837.78 |
| Penalties | $37,289.13 |
| Retirement contributions | $16,343.34 |
| Penalties | $51,481.74 |
| **Total** | **$175,845.99** |

**ENTERED: November 12, 2026**
**FOR THE COURT:**

/s/Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**